BETSY C. MANIFOLD (SBN 182450)
RACHELE R. BYRD (SBN 190634)
MARISA C. LIVESAY (SBN 223247)
BRITTANY N. DEJONG (SBN 258766)
**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
byrd@whafh.com
livesay@whafh.com
dejong@whafh.com

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELAINE WANG, <br><br> Plaintiff, <br><br> v. <br><br> VIVINT SOLAR, INC., DAVID BYWATER, DAVID F. D'ALESSANDRO, BRUCE MCEVOY, JAY D. PAULEY, TODD R. PEDERSEN, ELLEN S. SMITH, JOSEPH S. TIBBETTS, JR., PETER F. WALLACE, SUNRUN INC., AND VIKING MERGER SUB, INC. <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Elaine Wang ("Plaintiff"), by her attorneys, makes the following allegations against Vivint Solar, Inc. ("Vivint Solar" or the "Company") and the members of the board of directors of Vivint Solar (the "Board" or "Individual Defendants," along with Vivint Solar, collectively referred to as the "Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed acquisition (the "Proposed Transaction") of Vivint Solar by affiliates of Sunrun Inc. ("Sunrun"). The allegations in this complaint are based on the personal knowledge of Plaintiff as to herself and on information and belief (including the investigation of counsel and review of publicly available information) as to all other matters stated herein.

## INTRODUCTION

1. This is an action brought by Plaintiff to enjoin a transaction whereby Viking Merger Sub, Inc., a Delaware corporation and direct wholly owned subsidiary of Sunrun ("Merger Sub") will merge with and into Vivint Solar, with Vivint Solar continuing as the surviving corporation as a direct wholly owned subsidiary of Sunrun ("Proposed Transaction"). Pursuant to the Merger Agreement, Vivint Solar shareholders will receive $0.55 shares of Sunrun common stock for each share of Vivint Solar common stock owned (the "Merger Consideration"). The Board has unanimously recommended to the Company's stockholders that they vote for the Proposed Transaction at the special meeting of the Vivint Solar shareholders. Vivint Solar shareholders will own approximately 36% of the post-transaction entity and Sunrun shareholders will own 64% of the post-transaction entity.

2. To convince Vivint Solar stockholders to vote in favor of the Proposed Transaction, on August 14, 2020, the Board authorized the filing of a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") with the Securities and Exchange Commission ("SEC"). The Registration Statement violates Sections 14(a) and 20(a) of the Exchange Act by noncompliance with Regulation G and SEC Rule 14a-9 (17 C.F.R. § 244.100 and 17 C.F.R. § 240.14a-9, respectively).

3.  Defendants have failed to disclose certain material information necessary for Vivint Solar stockholders to properly assess the fairness of the Proposed Transaction, thereby violating SEC rules and regulations and rendering certain statements in the Registration Statement materially incomplete and misleading.

4.  In particular, the Registration Statement contains materially incomplete and misleading information concerning the financial forecasts for the Company prepared and relied upon by the Board in recommending to the Company's stockholders that they vote in favor of the Proposed Transaction. The same forecasts were used by Vivint Solar's financial advisors, Morgan Stanley & Co. LLC and BofA Securities, Inc., in conducting their valuation analyses in support of their fairness opinions. The Registration Statement also contains materially incomplete and misleading information concerning certain financial analyses performed by the financial advisors.

5.  The material information that has been omitted from the Registration Statement must be disclosed prior to the forthcoming stockholder vote in order to allow the stockholders to make an informed decision regarding the Proposed Transaction.

6.  For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violations of Regulation G and Rule 14a-9. Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless, and until, all material information discussed below is disclosed to Vivint Solar stockholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated without corrective disclosures, to recover damages resulting from Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

7.  This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

8.  This Court has personal jurisdiction over each defendant named herein because each defendant is either a corporation that does sufficient business in California or an individual who has

sufficient minimum contacts with California to render the exercise of jurisdiction by the California courts permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Sunrun is headquartered in this District.

## PARTIES

10. Plaintiff has owned the common stock of Vivint Solar since prior to the announcement of the Proposed Transaction herein complained of and continues to own this stock.

11. Vivint Solar is a corporation duly organized and existing under the laws of Delaware and maintains its principal offices in Lehi, Utah. Vivint Solar is, and at all relevant times hereto was, listed and traded on the New York Stock Exchange under the symbol "VSLR."

12. Defendant David Bywater has been a member of the Board since 2017 and is also the Chief Executive Officer of the Company.

13. Defendant David F. D'Alessandro has been a member of the Board since 2013.

14. Defendant Bruce McEvoy has been a member of the Board since 2012.

15. Defendant Jay D. Pauley has been a member of the Board since 2015.

16. Defendant Todd R. Pedersen has been a member of the Board since 2012.

17. Defendant Ellen S. Smith has been a member of the Board since 2020.

18. Defendant Joseph S. Tibbetts, Jr. has been a member of the Board since 2014.

19. Defendant Peter F. Wallace has been a member of the Board since 2012 and is the Chairman of the Board.

20. Sunrun is a corporation duly organized and existing under the laws of Delaware and maintains its principal offices on 225 Bush Street, Suite 1400, San Francisco, California 94104.

21. Merger Sub is a Delaware corporation and a wholly owned subsidiary of Sun, formed solely for the purposes of the Proposed Transaction.

22. The Defendants referred to in paragraphs 12-19 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

23. The Defendants referred to in paragraphs 11-21 are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

*The Proposed Transaction*

24. On July 6, 2020, Vivint Solar and Sunrun jointly announced that it had entered into the Agreement and Plan of Merger (the "Merger Agreement"):

> SAN FRANCISCO, July 06, 2020 (GLOBE NEWSWIRE) -- Sunrun (NASDAQ: RUN), a leading provider of residential solar, battery storage and energy services, and Vivint Solar (NYSE: VSLR), a leading full-service residential solar provider in the United States, today announced the companies have entered into a definitive agreement under which Sunrun will acquire Vivint Solar in an all-stock transaction, pursuant to which each share of Vivint Solar common stock will be exchanged for 0.55 shares of Sunrun common stock, representing a combined Enterprise Value of $9.2 billion based on the closing price of Sunrun's shares on July 6, 2020. Vivint Solar stockholders are expected to own approximately 36% and Sunrun stockholders are expected to own approximately 64% of the fully diluted shares of the combined company. The exchange ratio implies a 10% premium for Vivint Solar shares based on closing prices on July 6, 2020, and a 15% premium to the exchange ratio implied by the three month volume weighted average price of Vivint Solar and Sunrun shares.
>
> "Americans want clean and resilient energy. Vivint Solar adds an important and high-quality sales channel that enables our combined company to reach more households and raise awareness about the benefits of home solar and batteries," said Lynn Jurich, Sunrun's Chief Executive Officer and co-founder. "This transaction will increase our scale and grow our energy services network to help replace centralized, polluting power plants and accelerate the transition to a 100% clean energy future. We admire Vivint Solar and its employees, and look forward to working together as we integrate the two companies."
>
> David Bywater, Chief Executive Officer of Vivint Solar, added, "Vivint Solar and Sunrun have long shared a common goal of bringing clean, affordable, resilient energy to homeowners. Joining forces with Sunrun will allow us to reach a broader set of customers and accelerate the pace of clean energy adoption and grid modernization. We believe this transaction will create value for our customers, our shareholders, and our partners."
>
> **A Shared Mission to Create a Planet Run by the Sun**
>
> Sunrun and Vivint Solar share a mission to create a planet run by the sun. Together, we can empower more families to take control of their energy future by increasing customer choice in how they create and consume power.
>
> There is an urgent need to decarbonize our energy system. Extreme weather due to climate change is increasing, putting immense strain on our energy system. Fossil

fuel power plants are responsible for more than 30% of all carbon pollution across the country. Sunrun will be a meaningful contributor to a fully renewable and electrified energy system. Our growing fleet of solar homes and batteries will be networked to provide greater benefits to the grid and energy consumers. Generating energy at the point it is used reduces the need for dirty energy being produced far away that is increasingly expensive to transmit. Our customers have already and will continue to help shut down inefficient carbon-producing power plants.

Our combined customer base of nearly 500,000 creates a leading owner of solar assets globally, with over 3 gigawatts of solar assets on the balance sheet. Yet, residential solar has reached only 3% penetration in the United States today and the runway for growth remains massive.

Sunrun has committed to leading the solar industry in diversity and inclusion efforts, career development, and employee benefits. As part of a broader, more diversified company, we will be able to offer employees even more opportunities and solidify our position as the best place to work in the solar industry.

**Strategic Rationale**

This is a transformational opportunity to generate consumer and shareholder value, realize annual cost synergies and bring cleaner, affordable energy to more homes. It establishes Sunrun as a leading home solar and energy services company across the United States, bringing greater opportunities for consumers to save money on their electric bills and decrease dependence on fossil fuels.

Residential solar has reached only 3% penetration in the United States today and yet surveys show nearly 9 out of 10 people in the United States favor expanding the use of solar power. The acquisition of Vivint Solar adds a complementary direct-to-home sales channel to Sunrun's platform, increasing our reach and capabilities in a growing market. Our thirteen years of experience has shown that a consultative experience from trusted sales advisors is important to educate customers of the merits of solar energy. Vivint Solar's highly trained, consultative field sales experts will be an important part of the combined platform and will serve as critical ambassadors for consumers to learn the benefits of solar energy.

Like Sunrun, Vivint Solar has adapted to the current environment, accelerating digital lead generation efforts and providing a contact-less selling and installation experience in most instances. This transition has resulted in improvements for both companies, including setting the foundation for structural cost reductions and improved customer experience.

We expect to deliver meaningful cost synergies, estimated at $90 million on an annual basis. We see opportunities across the entire cost base, including consolidating and optimizing our branch footprint, reducing redundant spending on

technology systems, scaling our proprietary racking technology, as well as improving sourcing capabilities within our supply chains. There are also opportunities to realize scale benefits from shared corporate functions including accounting, human resources, legal, and policy.

We expect additional revenue synergies to generate enhanced value creation for our customers and shareholders from a larger base of solar assets. We expect to be able to offer batteries to the combined base of solar customers. A larger footprint of solar and battery assets also increases the value of what we bring to our grid services partnerships and strengthens our ability to deliver considerable value in that business. We expect to benefit from efficiencies in large scale project finance capital raising activities and are excited about the opportunity to build an even stronger and more recognizable consumer brand in residential energy services.

**Benefits for Customers**

Most energy consumers are currently beholden to a single power company that provides electricity to them based on their household location. As a benefit of this combination, Sunrun's increased scale, operating efficiency and combined research and development (R&D) efforts will enable the company to even further accelerate the adoption of renewable energy and give households more control over their energy future.

A lower cost structure from greater scale can open more markets and allow lower pricing for customers, accelerating the transition away from polluting fossil fuels. It will also give our customers access to better, more affordable products and services. Lastly, combining R&D resources and focusing efforts will allow us to accelerate the offering of advanced solutions, such as virtual power plants and other energy services programs, to more customers in more markets.

**Transaction Details**

Under the terms of the definitive transaction agreement, each share of Vivint Solar common stock issued and outstanding immediately prior to the effective time of the merger will be converted automatically into the right to receive 0.55 shares of Sunrun common stock.

The Board of Directors of Sunrun and Vivint Solar have each unanimously voted in favor of the definitive transaction agreement.

The acquisition of Vivint Solar is expected to be completed during the fourth quarter of 2020, subject to approval by Vivint Solar and Sunrun stockholders, regulatory approvals and other customary closing conditions.

Sunrun's Board of Directors will be expanded by adding 2 directors, one of which is

> expected to be Vivint Solar's CEO, David Bywater.
>
> Support Agreements have been obtained from both companies' largest stockholders, 313 Acquisition LLC (Blackstone affiliate) and Tiger Global, to vote their respective shares in favor of the merger and the share issuance, respectively.
>
> In addition, 313 Acquisition LLC (Blackstone affiliate) has agreed to lock up 50% of shares obtained as a result of the acquisition for 60 days following closing and the remaining 50% for 120 days. Sales are allowed to occur during these periods subject to certain conditions.
>
> **Advisors**
>
> Credit Suisse Securities (USA) LLC is serving as the exclusive financial advisor to Sunrun and Cooley LLP and Axinn, Veltrop & Harkrider LLP are serving as legal counsel. Morgan Stanley & Co. LLC is serving as the lead financial advisor to Vivint Solar, BofA Securities, Inc. is serving as a financial advisor to Vivint Solar and Simpson Thacher & Bartlett LLP and Wilson Sonsini Goodrich & Rosati are serving as legal counsel.

*The Materially Misleading and Incomplete Solicitation Statement*

25. On August 14, 2020, Defendants caused the Registration Statement to be filed with the SEC in connection with the Proposed Transaction. The Registration Statement solicits the Company's shareholders to vote in favor of the Proposed Transaction. Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Financial Forecasts*

26. The Registration Statement discloses tables for forecasts for both Vivint Solar and Sunrun (the "Projections"). However, the Registration Statement fails to provide material information concerning these Projections, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Transaction. These financial forecasts were also relied upon by the Company's financial advisors,

Morgan Stanley & Co. LLC and BofA Securities, Inc, in rendering its fairness opinion.

27.     With respect to the Sunrun Management Projections, the Registration Statement fails to provide: (i) the value of certain line items used to calculate (a) Sunrun Total Volume (Megawatts), (b) Sunrun Total Megawatts, (c) Sunrun Total Costs, (d) Sunrun Net Cash Flow, (e) Vivint Solar Total Megawatts, (f) Vivint Solar Total Costs, (g) Vivint Solar Net Cash Flow, (h) Sunrun Projected Levered Cash Flow, (i) Total Sunrun Projected Cash Flow Scenario, (j) Vivint Solar Projected Levered Cash Flow Scenario, and (k) Total Vivint Solar Projected Levered Cash Flow Scenario, all of which are non-GAAP measures; (ii) a reconciliation to its most comparable GAAP measures, in direct violation of Regulation G and, consequently, Section 14(a); and (iii) stock-based compensation.

28.     With respect to the Sunrun Combined Company Forecasts, the Registration Statement fails to provide: (i) the value of certain line items used to calculate (a) Aggregate Proceeds and (b) Aggregate Costs, all of which are non-GAAP measures; (ii) a reconciliation to its most comparable GAAP measures, in direct violation of Regulation G and, consequently, Section 14(a); and (iii) stock-based compensation.

29.     With respect to the Vivint Solar Management Projections, the Registration Statement fails to provide:  (i) the value of certain line items used to calculate (a) Vivint Solar Total Megawatts (b) Vivint Solar Total System Costs, (c) Vivint Solar EBITDA, (d) Vivint Solar Levered Free Cash Flow, (e) Sunrun Total Megawatts, (f) Sunrun Total System Costs, (g) Sunrun EBITDA, and (h) Sunrun Levered Free Cash Flow, all of which are non-GAAP measures; (ii) a reconciliation to its most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a); and (iii) stock-based compensation.

30.     The SEC has indicated that if the most directly comparable GAAP measure is not accessible on a forward-looking basis, the company must disclose that fact, provide any reconciling information that is available without unreasonable effort, identify any unavailable information and disclose the probable significance of that information. A company is permitted to provide the projected non-GAAP measure, omit the quantitative reconciliation and qualitatively explain the types of gains, losses, revenues or expenses that would need to be added to or subtracted from the non-GAAP measure to arrive at the most directly comparable GAAP measure, without attempting to

quantify all those items.

31. When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all forecasts and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

32. Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders. Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific, non-GAAP financial measures (as Vivint Solar included in the Registration Statement here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

33. The SEC has repeatedly emphasized that disclosure of non-GAAP forecasts can be inherently misleading and has therefore heightened its scrutiny of the use of such forecasts.[2] Indeed,

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (last visited Aug. 18, 2020) (emphasis added).

[2] *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, HARVARD LAW SCHOOL FORUM ON CORPORATE GOVERNANCE (June 24, 2016),

the SEC's Division of Corporation Finance released a new and updated Compliance and Disclosure Interpretation ("C&DI") on the use of non-GAAP financial measures to clarify the extremely narrow and limited circumstances, known as the business combination exemption, where Regulation G would not apply.[3]

34. More importantly, the C&DI clarifies when the business combination exemption does not apply:

> There is an exemption from Regulation G and Item 10(e) of Regulation S-K for non-GAAP financial measures disclosed in communications subject to Securities Act Rule 425 and Exchange Act Rules 14a-12 and 14d-2(b)(2); it is also intended to apply to communications subject to Exchange Act Rule 14d-9(a)(2). This exemption does not extend beyond such communications. Consequently, if the same non-GAAP financial measure that was included in a communication filed under one of those rules is also disclosed in a Securities Act registration statement, proxy statement, or tender offer statement, this exemption from Regulation G and Item 10(e) of Regulation S-K would not be available for that non-GAAP financial measure.

*Id.*

35. Thus, the C&DI makes clear that the so-called "business combination" exemption from the Regulation G non-GAAP to GAAP reconciliation requirement applies solely to the extent that a third-party, such as a financial advisor, has utilized projected non-GAAP financial measures to render a report or opinion to the Board. To the extent the Board also examined and relied on internal financial forecasts to recommend a transaction, Regulation G applies.

36. Thus, to bring the Registration Statement into compliance with Regulation G as well as cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

/ / /

---

https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/ (last visited Mar. 7, 2019); Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. TIMES, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0 (last visited Aug. 18, 2020).

[3]  *Non-GAAP Financial Measures*, U.S. SECURITIES AND EXCHANGE COMMISSION (Apr. 4, 2018), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm#101 (last visited Aug. 18, 2020). To be sure, there are other situations where Regulation G would not apply but are not applicable here.

*Financial Analyses*

37. With respect to Morgan Stanley's *Trading Comparables Analysis* -- Vivint Solar, the Registration Statement fails to disclose: (i) the estimated outstanding shares of Company common stock on a fully-diluted basis; and (ii) the net debt of the Company as used by Morgan Stanley in the analysis.

38. With respect to Morgan Stanley's *Levered Discounted Cash Flow Analysis* – Vivint Solar and for the Pro Forma company, the Registration Statement fails to disclose: (i) all line items used to calculate levered free cash flows; (ii) the underlying inputs used to derive the discount rate of 9.3% to 11.3%; (iii) the terminal values for Vivint Solar; (iv) the basis for applying EBITDA trading multiples ranging from 12.0x to 16.0x; (v) the number of fully diluted outstanding shares of Vivint Solar common stock; and (vi) the estimated consolidated net debt of Vivint Solar.

39. With respect to Morgan Stanley's *Trading Comparables Analysis* -- Sunrun, the Registration Statement fails to disclose: (i) the estimated outstanding shares of Company common stock on a fully-diluted basis; and (ii) the net debt of the Company as used by Morgan Stanley in the analysis.

40. With respect to Morgan Stanley's *Levered Discounted Cash Flow Analysis* – Sunrun, the Registration Statement fails to disclose: (i) all line items used to calculate levered free cash flows; (ii) the underlying inputs used to derive the discount rate of 9.4% to 11.4%; (iii) the terminal values for Sunrun; (iv) the basis for applying EBITDA trading multiples ranging from 12.0x to 16.0x; (v) the number of fully diluted outstanding shares of Sunrun common stock; and (vi) the estimated consolidated net debt of Sunrun.

41. With respect to BofA's *Selected Publicly Traded Companies Analysis* – Vivint Solar, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by BofA in the analysis.

42. With respect to BofA's *Discounted Cash Flow Analysis* – Vivint Solar, the Registration Statement fails to disclose: (i) all line items used to calculate levered, after-tax free cash flows; (ii) the underlying inputs used to derive the discount rate of 9.0% to 12.0%; (iii) the terminal values for Vivint Solar; and (iv) the basis for applying exit multiples ranging from 0.5x to 0.9x.

43. With respect to BofA's *Selected Publicly Traded Companies Analysis* – Sunrun, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by BofA in the analysis.

44. With respect to BofA's *Discounted Cash Flow Analysis* – Sunrun, the Registration Statement fails to disclose: (i) all line items used to calculate levered, after-tax free cash flows; (ii) the underlying inputs used to derive the discount rate of 10.0% to 13.5%; (iii) the terminal values for Sunrun; and (iv) the basis for applying exit multiples ranging from 1.1x to 1.5x.

45. With respect to BofA's *Has/Gets Analysis*, the Registration Statement fails to disclose: (i) the underlying inputs used to derive the discount rate of 10.00% to 13.50%; and (ii) the basis for applying a perpetuity growth rate of 0% to 1%.

46. In sum, the Registration Statement independently violates both: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial measure to their most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading. As the Registration Statement independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Registration Statement to garner votes in support of the Proposed Transaction from Vivint Solar shareholders.

47. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff will not be able to make a fully informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**FIRST CAUSE OF ACTION**
**(Against All Defendants for Violations of Section 14(a) of the Exchange Act**
**and 17 C.F.R. § 244.100 Promulgated Thereunder)**

48. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

49. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national

securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

50. As set forth above, the Registration Statement omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a). SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a).

51. The failure to reconcile the numerous non-GAAP financial measures included in the Registration Statement violates Regulation G and constitutes a violation of Section 14(a).

**SECOND CAUSE OF ACTION**
**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

52. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

53. SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . ." 17 C.F.R. § 240.14a-9.

54. Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading." 17 C.F.R. § 244.100(b).

55. Defendants have issued the Registration Statement with the intention of soliciting

shareholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, amongst other things, the financial forecasts for the Company.

56. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

57. The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

58. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading.

59. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial forecasts.

60. Vivint Solar is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a)
AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934
- 14 -

61. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

62. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**THIRD CAUSE OF ACTION**
**(Against the Individual Defendants for**
**Violations of Section 20(a) of the Exchange Act)**

63. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

64. The Individual Defendants acted as controlling persons of Vivint Solar within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Vivint Solar, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

65. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing the Registration Statement.

67. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

68. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

69. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

70. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B. In the event that the proposed transaction is consummated, rescinding it and setting it aside, or awarding rescissory damages;

C. Awarding compensatory damages against Defendants, individually and severally, in an amount to be determined at trial, together with pre-judgment and post-judgment interest at the maximum rate allowable by law, arising from the Proposed Transaction;

D. Awarding Plaintiff the costs and disbursements of this action and reasonable allowances for fees and expenses of Plaintiff's counsel and experts; and

E.  Granting Plaintiff such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: August 20, 2020

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By:  */s/ Rachele R. Byrd*
     RACHELE R. BYRD

BETSY C. MANIFOLD
RACHELE R. BYRD
MARISA C. LIVESAY
BRITTANY N. DEJONG
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
byrd@whafh.com
livesay@whafh.com
dejong@whafh.com

**Of Counsel**:

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
GLORIA KUI MELWANI
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114

*Counsel for Plaintiff*

809386